UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                               Case No. 09-13388

LEO H. BIBIN, Jr., CHRISTOPHER J. THIEL,
JOAN A. BIBIN, and BANK OF AMERICA,
N.A.,

    Defendants.
_____/

**<u>MEMORANDUM AND ORDER</u>**
**<u>GRANTING THE UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**
**<u>(Doc. 24)</u>**
**<u>AND</u>**
**<u>GRANTING THE UNITED STATES' MOTION TO SUPPLEMENT COMPLAINT</u>**
**<u>(Doc. 25)</u>**
**<u>AND</u>**
**<u>DEFERRING DECISION ON BANK OF AMERICA'S MOTION TO DISMISS OR FOR</u>**
**<u>SUMMARY JUDGMENT (Doc. 28)</u>**[1]

**I. Introduction**

This is an action by the United States of America (the government) to reduce to judgment unpaid federal tax liabilities and to enforce tax liens through foreclosure. The government says that the unpaid taxes are owed by defendant Leo H. Bibin, Jr. (Bibin)[2] for failing to collect and pay over FICA taxes from the wages of employees of The New Tannery, Inc. (Tannery), a company owned by Bibin. After Bibin failed to pay the taxes

---

[1]The Court deems these matters appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

[2]Bibin is proceeding pro se.

and they were assessed, a lien became attached to all property owed by Bibin in the form of a federal tax lien. The government says one piece of property subject to the tax lien is real property located at 39723 Duluth Street in Harrison Township, Michigan. As will be explained, the property has been sold several times since Bibin owned it, the most recent owners being Frederick and LuAnn Rheeder.

Before the Court are several motions, as follows:

> The government's Motion for Partial Summary Judgment (Doc. 24)
>
> The government's Motion to Supplement the Complaint (Doc. 25)
>
> Bank of America's Motion to Dismiss or for Summary Judgment (Doc. 28)

For the reasons that follow, the government motion for partial summary judgment will be granted, the government's motion to supplement the complaint will be granted, and decision on Bank of America's motion to dismiss or for summary judgment will be deferred.

## II. Background

The government's papers detail the following relevant facts which are undisputed:

### A. Facts Relating to Tannery

Tannery was incorporated in Michigan in 1992, by Diane "Chris" Vizzaccero. In 1995, Bibin became president of the company. After Vizzaccero's death in 2001, Bibin became the sole officer of the company, as well as 100% owner. Bibin remained the sole officer of the company, as well as the 100% owner until Tannery declared bankruptcy and was sold to a new owner. Bibin had check-signing authority, signed federal tax returns, and admitted that he was responsible for paying payroll taxes.

Bibin became aware that Tannery had unpaid taxes as early as May 2001. As president and owner of the company, Bibin's responsibilities included supervising its business operations, including its financial policy. Bibin had discussions with the outside accountants regarding the unpaid tax liabilities and was responsible for communications with the IRS. Despite the outstanding tax liabilities, Bibin allowed the company to pay other obligations, including payroll, utilities, and supplies.

Tannery operated under a policy to pay what it perceived to be more important and urgent bills before paying tax liabilities. Despite Tannery losing money in 2001 and 2002 and eventually declaring bankruptcy in 2005, all employee payrolls were paid.

The liabilities arise upon the failure of Tannery, an employer, to pay over to the United States the income taxes, FICA (Social Security) and Medicare taxes that were withheld, or should have been withheld, from the salaries or wages of its employees. These liabilities are frequently referred to as trust fund liability. The government says that Bibin, as a person responsible for collecting and accounting for the taxes, can be held liable. Interest continues to accrue as provided by statute on the unpaid assessed liabilities.

On the dates below, the government made assessments against Bibin as a responsible person of Tannery for the tax periods ending 12/31/2001, 12/31/2002, 3/31/2003, 6/30/2003, 9/30/2003, 12/31/2003, 9/30/2004, 12/31/2004, 3/31/2005, 9/30/2005, and 12/31/2005, as set forth below, for the tax periods, in the amounts, and for which the following balances remain due as of June 1, 2010:

| Quarter Ending | Assessment Due | Assessed Amount | Balance as of June 1, 2010 |
|---|---|---|---|

| | | | |
|---|---|---|---|
| 12/31/2001 | 5/17/2004 | $9,835.38 | $0.00 |
| 12/31/2002 | 5/17/2004 | $12,018.11 | $16,342.27 |
| 3/31/2003 | 5/17/2004 | $9,674.05 | $13,904.90 |
| 6/30/2003 | 5/17/2004 | $9,536.21 | $13,706.81 |
| 9/30/2003 | 5/17/2004 | $3,274.11 | $4,560.81 |
| 12/31/2003 | 3/13/2006 | $8,082.02 | $10,107.30 |
| 9/30/2004 | 3/13/2006 | $7,019.65 | $9,106.79 |
| 12/31/2004 | 3/20/2006 | $4,187.06 | $5,424.68 |
| 3/31/2005 | 2/25/2008 | $3,311.94 | $3,691.05 |
| 9/30/2005 | 2/25/2008 | $1,106.53 | $1,233.19 |
| 12/31/2005 | 2/25/2008 | $1,933.08 | $2,154.35 |
| **Total as of June 1, 2010** | | | $80,232.15 |

The IRS issued notice of each of these assessments to Bibin and made a demand for payment. Bibin has not paid.

### B. Facts Relating to the Property at Issue

As a result of Bibin's failure to pay the above assessments, federal tax liens in the amounts of the assessments, plus interest and other statutory additions, arose on the dates of the assessments, and attached to all property and rights to Bibin's property, including after-acquired property.

The property upon which the government seeks to foreclose its federal tax liens is known as 39723 Duluth Street, Harrison Township, Michigan ("the Real Property"), and is situated within the Eastern District of Michigan. The legal description of the Real Property is as follows:

> Lots 6, 7 and 8, Clinton Riverside Subdivision, according to the plat thereof as recorded in Liber 4, page 95 of Plats, Macomb County Records.

Bibin initially acquired an interest in the Real Property in a deed dated March 6, 1987, and recorded March 9, 1987 in the Macomb County Register of Deeds in Liber 4144, Page 745. That deed conveyed the Real Property from Darrell W. Coe and Carol A. Coe to "Leo H. Bibin, Sr. and Barbara Bibin his wife and Leo H. Bibin, Jr."

In an unrecorded deed dated May 14, 1987, Leo H. Bibin, Sr., Barbara Bibin, and Leo H. Bibin, Jr., transferred title of the Real Property to "Leo H. Bibin, Sr. and Barbara Bibin his wife and Leo H. Bibin, Jr. as joint tenants with full rights of survivorship and not as tenants in common."

On May 19, 1987, a corrected copy of the deed described above which initially stated that Darrell W. Coe and Carol A. Coe conveyed the Real Property to "Leo H. Bibin, Sr. and Barbara Bibin his wife and Leo H. Bibin, Jr.," was recorded in the Macomb County Register of Deeds in Liber 4197, Page 715. Following the words "Leo H. Bibin, Sr. and Barbara Bibin his wife and Leo H. Bibin, Jr.," the revised copy added "as joint tenants with full rights of survivorship but not as tenants in common."

On August 10, 1987, Leo H. Bibin, Sr., died. On January 26, 1995, Barbara Bibin, his wife, died. As a result of the deaths of Leo H. Bibin, Sr., and Barbara Bibin, Bibin, Jr., became the sole owner of the Real Property.

On August 5, 2004, a delegate of the Secretary of Treasury filed a Notice of Federal Tax Lien in accordance with 26 U.S.C. § 6323(e) in Liber 15735, Page 338, in the Macomb County Register of Deeds for Bibin federal tax liabilities described above

from 2001 to September of 2003.

On June 25, 2007, the Secretary of Treasury filed a Notice of Federal Tax Lien in accordance with 26 U.S.C. § 6323(b) in Liber 18793, Page 151, with the Macomb County Register of Deeds for Bibin's federal tax liabilities described above for the quarters ending December 2003 to December 2004.

On May 30, 2007, Bibin, as a survivor of Leo H. Bibin, Sr. and Barbara Bibin, transferred the Real Property to Christopher J. Thiel, for $510,000.00. The deed was recorded June 27, 2007 with the Macomb County Register of Deeds in Liber 18797, Page 541.

Bank of America became the holder of a mortgage obtained by Christopher Thiel (Thiel) dated May 30, 2007 on the Real Property. The mortgage was recorded on June 27, 2009 in the Macomb County Register of Deeds, in Liber 18797, Page 542.

Thiel defaulted on the mortgage and Bank of America commenced non-judicial foreclosure proceedings without notice to the government.

On April 24, 2009, a deputy sheriff of Macomb County transferred the Real Property to Bank of America as the wining bidder in a non-judicial foreclosure sale of the Real Property. The sale was recorded on May 5, 2009 in Liber 19771, in the Macomb County Register of Deeds.

On August, 26, 2009, the government filed this action. In addition to Bibin, the government names Thiel, Joan A. Bibin, and Bank of America as defendants.[3] Joan A.

---

[3]The government initially named Washington Mutual as a defendant. Bank of America, who succeeded to the rights of Washington Mutual, was substituted as a defendant on November 2, 2009. (Doc. 9).

Bibin has disclaimed any interest in the Real Property.  See Doc. No. 6.  Thiel has been served but has not answered the complaint.

From November 2009 to May 2010, the government and Bank of America attempted to settle issues as to the government's priority with respect to the liens and whether to sell the Real Property.  Settlement was not reached.

On January 15, 2010, Bank of America filed a cross claim against Bibin and Thiel.  As to Bibin, Bank of America claims unjust enrichment and indemnification.  As to Thiel, Bank of America claims breach of contract and unjust enrichment.

On February 18, 2010, Bank of America sold the Real Property to Fredrick L. Rheeder and LuAnn Rheeder for $232,500.00.  It is unclear whether Fredrick L. Rheeder and LuAnn Rheeder were informed of the pending dispute, or the government's liens notices.  The sale was recorded March 25, 2010 with the Macomb County Register of Deeds at Liber 20192, Page 332.

### III.  The Government's Motion for Partial Summary Judgment

#### A.  Legal Standard

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).  Showing that there is some

metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion.  See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50.  Additionally, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings.  Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

### B.  Parties' Arguments

The government says Bibin is liable for federal trust fund taxes in the amount of $80,232.15 plus interest.  The government says that the federal tax assessments are presumptively correct and Bibin cannot, and has not, overcome the presumption.  The government also says that Bibin is liable for trust fund recovery as a responsible person who willfully or recklessly disregarded his obligation to pay over the withheld taxes.

In response, Bibin does not deny his responsibility for the taxes.  Rather, he recounts various personal and financial difficulties.  He also suggests that he believed the taxes should have been paid out when the Real Property was sold to Thiel and/or that the dispute is between the government and Bank of America.

### C.  Analysis

As an initial matter, it is important to note what the government is asking for in its

motion. It is seeking partial summary judgment on the issue of Bibin's <u>liability</u> for unpaid federal trust fund taxes. In other words, the government seeks to reduce Bibin's obligations to judgment. The issue of how to deal with the tax liens is another, and more complicated, matter.

As to Bibin's obligations, sections 3102(a) and 3402(a) of the Internal Revenue Code require an employer to deduct and withhold income and social security taxes from the wages paid to its employees. <u>Slodov v. United States</u>, 436 U.S. 238, 242-43 (1978). Employers are also required to pay over their own contributions to the social security system. <u>See</u> 26 U.S.C. § 3111. "Because federal law requires employers to hold these funds in 'trust for the United States,' 26 U.S.C. § 7501(a), these taxes are commonly referred to as 'trust fund' taxes." <u>United States v. Energy Resources Co., Inc.</u>, 495 U.S. 545, 546-47 (1990). These "trust fund taxes" are for the exclusive use of the government and are not to be used as working capital for the business or to pay the employer's business expenses, including payroll. 26 U.S.C. §§ 3102(b), 3403, 7501(a); <u>Begier v. Internal Revenue Service</u>, 496 U.S. 53, 60-61 (1990) (the act giving rise to tax liability, e.g., payment of wages, gives rise to a statutory trust in favor of the United States).

The employer is required to report the amount of withheld taxes on its "Employer's Quarterly Federal Tax Return" (Form 941). <u>See</u> 26 C.F.R. § 31.6011(a)-4(a)(1). A Form 941 tax return must be filed every calendar quarter and is generally due on the last day of the first month following the quarter. See 26 C.F.R. § 31.6071(a)-1(a). Once the trust fund taxes are withheld from the employees' wages, the government is required to credit the amount withheld against the employees'

individual income tax liabilities, and to record their earnings for Social Security and Medicare eligibility, regardless of whether such taxes are actually paid to the United States and even though the credits may result in refunds to the employees based upon taxes which it has never actually received. See 26 U.S.C. § 31(a); 26 C.F.R. § 1.31-1(a). Thus, the government suffers a loss of revenue, and incurs an unfunded Social Security and Medicare liability, when the "trust fund taxes" are not remitted by the employer.

Here, the government suffered such a loss and assessed it against Bibin. Tax assessments by the IRS are entitled to a presumption of correctness. Welch v. Helvering, 290 U.S. 111, 115 (1933); Sherwin-Williams Co. v. United States, 403 F.3d 793, 796 (6th Cir. 2005). In a suit by the government to reduce liabilities to judgment, the introduction into evidence of Forms 4340 , Certificates of Assessment and Payment, establishes a prima facie case. United States v. Noble, 3 Fed. Appx. 331, 334 (6th Cir. 2001); United States v. Walton, 909 F.2d 915, 919 (6th Cir. 1990). "[T]he taxpayer will bear not only the burden of production, but also the burden of proving by a preponderance of the evidence that the Commissioner's assessment is 'arbitrary and excessive.'" Id. at 918-919 (quoting Helvering v. Taylor, 293 U.S. 507, 515 (1935)). The taxpayer must demonstrate either that the assessment is erroneous or that the assessment lacked a minimal evidentiary foundation. Id. "If the taxpayer fails to meet his burden of presenting sufficient evidence showing the assessments to be incorrect, summary judgment in favor of the Government is appropriate upon submission of the Certificates of Assessments and Payments." Fisher v. United States, 61 F.Supp.2d 621, 630 (E.D. Mich. 1999).

As noted above, the IRS made the assessments against Bibin. These assessments are evidenced by Certificates of Assessments, Payments, and Other Specified Matters, Form 4340 ("Certificates of Assessments"), attached as s Exhibits 1-11. These Certificates of Assessments suffice, as a matter of law, to prove that the IRS made its assessments against Bibin on the dates indicated (the "23C date"), and that it made those assessments according to the requirements of the Internal Revenue Code. See, e.g., United States v. Rogers, 558 F. Supp. 2d 774, 781 (N.D. Ohio 2008); Gentry v. United States, 962 F.2d 555, 557 (6th Cir. 1992). In other words, the Certificates of Assessment establish that Bibin owes the tax liabilities listed on the certificates unless Bibin can prove otherwise.

"In order to overcome the presumption, the taxpayer bears the burden of proving by a preponderance of the evidence, that, in fact, the assessment is incorrect." Fisher, supra, 61 F.Supp. at 630; see also United States v. Kraljevich, 364 F. Supp. 2d 655, 657 (E.D. Mich. 2005) (citing Kinnie v. United States, 994 F.2d 279, 283 (6th Cir. 1993) (the person against whom trust fund assessments are made "bears the burden of proving that he is not a responsible person under section 6672 and that he did not act willfully in failing to pay over the taxes."); Ameriquest Mortgage Co. v. Savalle, 2009 WL 2033236, *3 (E.D. Mich., Jul. 9, 2009) ("An IRS assessment under 26 U.S.C. § 6672 is presumptively correct and the person against whom an assessment is made has the burden of showing that he was not a responsible person or that his failure to pay the withholding taxes was not willful."). Bibin has not offered any evidence contesting the assessments. Thus, the question is whether Bibin is a responsible person or acted willfully in failing to pay over the taxes.

As to whether Bibin is a responsible person, section 6672 of the Internal Revenue Code provides that

> [a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672. "Person" as used in § 6672 includes, but in no way is limited to, an officer or employee of a company who is under a duty to collect and remit the taxes to the United States. 26 U.S.C. §6671(b). Thus, § 6672 authorizes the collection of the taxes from those persons who were responsible for the company's failure to pay them. "A person is responsible under section 6672 if he retains sufficient control of corporate finances that he can allocate corporate funds to pay the corporation's other debts in preference to the corporation's withholding tax obligations." Id. at 728.

Here, the evidence supports a finding that throughout the default periods when the taxes were not paid, Bibin was a responsible person at Tannery. He had a duty to collect and remit the trust fund taxes at issue to the government. Bibin was the sole shareholder and officer of Tannery, signed tax filings, had check-signing authority, supervised the business operations of the company, hired and fired employees, managed employees, directed or authorized payment of bills, opened and closed corporate bank accounts, signed and countersigned corporate checks, made or authorized bank deposits, authorized payroll checks, authorized payment of federal tax deposits, reviewed federal income tax returns, reviewed payroll tax returns or tax payments, and determined company financial policy. Bibin was also responsible for communicating with the IRS, had discussions with the company's accountants

12

regarding the liabilities, and even admitted that he was responsible in a signed statement. Moreover, by his own admissions, Bibin had nearly total control of the financial affairs of Tannery, uniquely possessed the ability to avoid the default on the company's trust fund tax obligations. Thus, there is no dispute that Bibin is a responsible person under § 6672.4.

As to whether Bibin acted willfully in that he knew, or recklessly disregarded the known risk, that trust fund taxes were not being paid to the government. "'Willfully' means merely that the responsible person 'had knowledge of the tax delinquency and knowingly failed to rectify it when there were available funds to pay the Government.'" Cooper v. United States, 827 F.Supp. 1309, 1313 (E.D. Mich. 1993) (citing cases). Willfulness may also be established if the responsible person "recklessly disregarded facts and known risks that the taxes were not being paid," such as "when a responsible officer attempts to 'immunize himself from the consequences of his actions by wearing blinders which will shut out all knowledge of the liability for and the nonpayment of [the] withholding taxes.'" Harold, 195 Fed.Appx. at 364 and 366 (citing Calderone v. United States, 799 F.2d 254, 264 and 260 (6th Cir. 1986)). "The responsible party need not exhibit an intent to defraud the IRS or some other evil motive; all that is necessary to demonstrate willfulness is the existence of an intentional act to pay other creditors before the federal government." Bell v. United States, 355 F.3d 387, 393 (6th Cir. 2004). Furthermore, "[i]t is no excuse that, as a matter of sound business judgment, the money was paid to suppliers and for wages in order to keep the corporation operating as a going concern—the government cannot be made an unwilling partner in a floundering business." Collins v. United States, 848

13

F.2d 740, 741-42 (6th Cir. 1988). Rather, "evidence that the responsible person had knowledge of payments to other creditors after he was aware of the failure to pay withholding tax is sufficient for summary judgment on the question of willfulness." Cooper v. United States, supra, 827 F.Supp. at 1313 (citing cases)

Here, as the primary person responsible for the financial affairs of Tannery, Bibin was responsible for the payment of wages and other corporate obligations while trust fund taxes remained unpaid. In fact, the evidence shows that he used corporate funds to pay other creditors and corporate debts, including employee salaries, preferentially to the trust fund taxes due and owing by Tannery. Accordingly, Bibin has not met his burden to show that his preferential payment of funds to himself and others ahead of the government did not amount to willfulness as a matter of law

In sum, Bibin is liable for the federal trust fund taxes in the amount of $80,232.12 plus interest after June 1, 2010. The government is entitled to partial summary judgment against Bibin.

### IV. The Government's Motion to Supplement the Complaint and Bank of America's Motion to Dismiss or for Summary Judgment

#### A. Background

Because the government's motion to supplement the complaint and Bank of America's motion to dismiss or for summary judgment have the overlapping issue of Bank of America's continued interest in the Real Property, they are discussed together.

The government seeks to supplement its complaint to add the current record title holders to the Real Property, Frederick L. Rheeder and LuAnn Rheeder. The government says that as the current title holders, they have an interest in the Real

Property which should be resolved within the confines of this action. The government also says that the sale by Bank of America to the Rheeders was made subject to and without disturbing the tax liens because Bank of America did not obtain a discharge of those liens in conjunction with the sale. The government says allowing it to supplement the complain will further the interest of judicial economy by having all potential relevant parties in one action. The government also says no defendants will be prejudiced and notes that no new claims are being added.

Bank of America says that the government's motion to supplement should be motion be denied as to it because it no longer has an interest in the Real Property. This is the same argument which forms the basis for Bank of America's motion to dismiss or for summary judgment. Bank of America essentially says that because it sold the Real Property, the government has no claims against it for the tax liens as a matter of law.

The government agues that Bank of America should remain in the case. The government says it has concerns as to whether the Rheeders were informed about the tax liens at the time of the sale. Thus, even if Bank of America no longer has an interest in the Real Property, the Rheeders may have claims against Bank of America if they had no knowledge of the tax liens.

### B. Analysis

As to the motion to supplement, under Fed. R. Civ. P. 15(d), "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense."

Here, there is no indication of bad faith, undue delay, or a dilatory motive. Allowing the government to supplement the complaint does not unduly prejudice any defendant.

As to Bank of America's motion, the Court agrees with the government that a decision on the motion should be deferred pending the addition of the Rheeders as a parties to this case. Moreover, because Bank of America has cross claims pending against Bibin and Thiel, keeping them as a party to the case makes sense

### V. Conclusion

For the reasons stated above, the government's motion for partial summary judgment is GRANTED. The government's motion to supplement the complaint is GRANTED. Decision on Bank of America's motion to dismiss or summary judgment is DEFERRED.

SO ORDERED.


Dated: November 17, 2010         S/Avern Cohn
                                 AVERN COHN
                                 UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record and Leo H. Bibin, Jr., 605 E. Square Lake Road, Troy, MI 48085 on this date, November 17, 2010, by electronic and/or ordinary mail.

                                 S/Julie Owens
                                 Case Manager, (313) 234-5160